My name is Bao-Lin Chen, representing Petitioner Mr. Deling Yang. The most important issue in the incident case is whether the petitioner, Mr. Yang, is credible. Therefore, the immigration judge and the BIA must have a good reason to question his credibility, and must offer specific reasons for any stated disbelief. Mr. Yang's credibility in this case should be decided on what he said in his credible fair hearing on May 7, 2001. So the issue is whether he was credible when he was only asked about 18 questions. And out of those 18 questions, only two about his political asylum claims. Whether his answer to those questions could haunt him later in his full-time asylum hearing. We could go back to the history of how he dealt with the U.S. government. He arrived in the U.S. on May 1, 2001, at the Miami airport. And he was asked very few questions then. He only replied, I was surprised in China. And then on May 7, 2001, just three years ago, he had a credible fair hearing. And we know the legal nature of that credible fair hearing is not a full-time asylum hearing. It was designed just to let Mr. Yang to pass the preliminary screen, and let the officers decide whether to summarily send him back to China or anywhere. And if the officer decided he had a credible asylum claim, he would be referred to the immigration judge who has a full-time hearing. And on September 13, he submitted his application form. That was in 2001. And then on September 18, 2001, he had a full-time hearing before the immigration judge. So he had only four occasions to talk about his persecution in China. Basically, the immigration judge said he said too little at the credible fair hearing. And then he talked too much at a full-time asylum hearing. And I pointed out in my brief, what he did was perfect, because his answer at the credible fair hearing was right. He didn't have a counsel present. His counsel didn't ask him questions to fully disclose his stories. And the questions asked was cited in my brief. Let me ask you to focus on one part, Matt. Yes, sir. I want to confess that I share some of your concern for the logic used by the immigration judge. But it is true in the asylum application, which an applicant prepares independently and can take time and can include and ought to include whatever should be there. It's my impression that he does not discuss the threat purportedly or allegedly made to him, that is to sterilize him. The focus in that paper is on what happened with his wife. And it is a little bit unusual that a direct threat to the applicant is not commented upon or not discussed at all in a paper that he's preparing, seeking asylum. And then later he testifies. And to put the best light on the immigration judge's logic, I think he's really saying, you know, if that really happened, there would have been discussion of that in the asylum application. What do you have to say to that? Yes, Your Honor. You are talking about the September 19 application form and where he mentioned his wife's persecution. And the answer to that question is, first, since he mentioned his persecution on May 7, 2001, at a creative hearing, he does not really have to mention that again. Of course, it would be better if he put that in his formal application form. So that his persecution, his threat with sterilization, actually was on the record already. And also, in the case I cited, Sen v. INS, it's a factually similar case. And in that case, similar questions were asked at the airport interview. Have you or your family member been prosecuted? And the applicant answered, no. So it's even worse. But even in that case, this court reversed the immigration judge and BIA's negative credibility finding. Basically saying, well, that was just when he arrived in a new country. He was still afraid of government officials. And there were only 17 questions asked there in Sen v. INS in comparison. There were only 18 questions asked. Some of the reasons why I'm more interested in the asylum application, where the limitations of an airport-type interview, or even a credible fear interview, don't apply. Because the applicant has the opportunity to put down whatever the applicant thinks should be included. Well, like I said just now, one answer is, if you compare Sen v. INS, that's a similar situation. And this court says that's okay. And then this case is actually stronger. He didn't say, I was not persecuted. He said, I was. But he didn't mention his wife. Mr. Chen, you said, in answer to the judge's question, that the threat to him, the threat of sterilization to him, was already on record. And are you talking about then his statement at the critical fear interview, where he says that I was suppressed in China? I believe that's where he made that statement, did he not? That was the first time. On May 1st, he said, I was suppressed. That's it. And then the second time at the credible fear hearing, he said a little bit more. He said, I was sterilized, something like that. But he didn't mention his wife. That's the focus of why the immigration judge said that was the one. And so. Do you know who helped him write the application? You mean on September 13, 2001? Yes. FBI 589. Yes. Yeah, I did. Well, did you leave the, I mean, maybe put the question to you, why, is that the reason that you left it out of the application? No, Your Honor. And I think there was explanation in the, in the transcript, in the judge's transcript. The immigration judge actually mentioned, say, why did you didn't do that? He said, because I was, I have, my education is not very high. And when I was writing something in the role, sometimes I forgot. And then at a hearing on September 18, the immigration judge initiated that question, say, by the way, you did at a credible hearing, you said that you were sterilized. Why you didn't put that in a form, a formal asylum form? And he said, well, I just, you know, when I was writing, I forgot to. But when you asked me, I could answer that. And another point is that some, I think there are case law to support that. If omission, let's say if on September 18, the 13th application, he didn't mention his sterilization. If that is an issue, then the question is whether that omission will enhance his claims or lessen his claims. So actually the omission just lessened his claims. And in that regard, I think this court has case laws that that kind of omission is not. That's true if you accept the credibility. But I think what the immigration judge is in effect saying is that if that had really happened, he wouldn't have forgotten it. He would have said it in the application. So we're still stuck on the credibility issue right now. I'm not saying that I agree with the immigration judge's conclusion. But I think the logic of it is that, as I can infer from what the immigration judge says, is that if he didn't say it there, it probably didn't happen. I think in evaluating credibility in terms of, you know, the omission, and the issues of whether the omission will lessen or enhance the claim, and if the omission does not enhance the claim, you know, that should not hold against his credibility. Thank you very much, Mr. Chen. Thank you. Good morning. Good morning, Your Honors. This is Frances McLaughlin on behalf of the Attorney General, John Ashcroft. The deference due to the judge dictates that this decision be affirmed. And importantly, the record does not compel a contrary conclusion. There is substantial evidence in this record to support the judge's adverse credibility determination. As this petitioner repeatedly changed his story as to whether it was him, his wife, or both of them who were threatened with a forced sterilization. The record is undisputed that the asylum application is a detailed account of events that allegedly took place at the petitioner's home in June of 1995. It is also undisputed that the petitioner did not once mention or infer that he was threatened with forced sterilization at that time. It is also clear that just a week later after filling out that application, at that time, he indeed said that he was threatened with forced sterilization as well as his wife. Let me ask you, is it true? Excuse me. Go ahead. In reviewing the record there, I'm looking for and have looked for inconsistencies in his statements that would give rise to an adverse ruling on credibility. But maybe you can point this out to me. I don't see inconsistent statements. I see incomplete statements. And one statement that has certain facts, and as pointed out by Mr. Chen, and the fact that Mr. Yang was threatened with sterilization, that came out in the critical fear interview. That was not included in the I-58, but was, again, related at the asylum hearing. To me, I see incomplete stories, but not inconsistent statements. I agree that it's not necessarily inconsistent, but it's more than just incomplete. The omissions each time that this petitioner had the opportunity to tell his story were material. They went to the very heart of the claim. It's the omissions. It's the failure to state the very heart, the very thrust, the fundamental nature of this petitioner's claim that gives rise to the adverse credibility determination. Let me ask you this. Is it true that they have a daughter and then had a son born in 1999? The record seems to indicate that. I think there are pictures of the family. I don't know if that was the case. The reason I ask that is because we know that this is what the Chinese government does. If you have more than one child, they force you to be sterilized. I mean, you know, he may have fouled up his application. I grant you that there is inconsistency there. When you get right down to the basic story, we know that this is what happens in China when you have more than one child. What do we do with that? Your Honor, that just serves as just because we know, just because it's plausible that this type of event could happen in China doesn't mean that it happened to this petitioner. And what's important is whether this petitioner put on his case and what's actually more important for this court to decide is whether there is substantial evidence to support the immigration judge's decision. This omission is at the very heart of the petitioner's claim. It's not trivial. It's not minor. It's not the type of case law that Mr. Chen relies upon. It's not the omission of a date or forgetting a time of year or where a rally took place. This omission goes to the very heart of the claim. Indeed, every case that Mr. Chen cites makes that distinction. And when there is an omission to the fundamental material aspect of a claim, that is substantial evidence to support the immigration judge's decision. Even if members of this panel would have looked at the evidence and weighed it differently, so long as this substantial evidence exists, the immigration judge's decision is due to be affirmed. So just because we could even take judicial notice or we actually have evidence from the State Department's country reports that forced sterilization can occur in China, that's not enough to show that it happened here. What matters before this court is the substantial evidence supporting the judge's decision. In the end, under the law here, if he had not been threatened at all with sterilization, it would not have made any difference because he could have qualified based on the sterilization, the threat and the actual sterilization of his wife. Your Honor, that's true. And if Mr. Chen had been able to credibly assert that, perhaps he would be granted asylum. But it's the inability to tell the same story twice about something as fundamental as the forced sterilization. Just as it cannot be believed that he was threatened with forced sterilization, it holds with equal weight that it can't be believed that it happened to his wife. Each time he had the opportunity to present a story, he presented a different one. Different but not conflicting, and that's what's unusual about this case. I mean, heaven knows we see enough adverse credibility determination cases, but the one that makes this one stand out from I think any that I've seen is that the alleged inconsistency is not two stories that clash or facts that can't be reconciled. We have here two stories that can be reconciled, and the issue really becomes is the failure to recall and relate at the time, at one of the first two times, the more complete story that is given at the hearing. Does that establish sufficient evidence for the adverse credibility determination? I'll say for the credibility, credible fear hearing, I think that's a hard place to make that argument because you're responding to questions posed by the examiner, and examiner satisfied stops asking questions, you stop answering them. The asylum application, I think, gives me more pause, and I've already indicated that, but let me pose specifically to you to make sure that I heard correctly the question really that Judge Zapata put to you. Are you aware of anything that is inconsistent or conflicting in the stories, as opposed to simply not the whole story or something omitted? Are there any facts that collide with each other in the various times that he told his story? Actually, yes, Your Honor, there are. I, of course, focus on the fundamental aspect of whether or not there was forced sterilization, and I would like to address the credible fear interview as well in just a moment, but I actually think it's telling that at the credible fear interview, he says that he was threatened with forced sterilization and that he was beaten. If you look at that, the credible fear interview is, I think, at AR 33, and also again later at AR 303 to 307 is the record of that. But then in his asylum application, not once does he mention beating, hitting, slapping. There's no mention of physical contact. By the time we get to the hearing, then he says that he was slapped. That's not the inconsistency on which we focused because you didn't need to, and there's an admission that's so glaring as to the very heart of the claim, but that does answer your question about another inconsistency throughout the stories. And I think what's important here about the credible fear interview that might help to some of the concern, keeping in mind the framework of the deference due to the judge here, it is the petitioner, not the judge, who overemphasizes the credible fear interview. To the judge, what the petitioner stated at the credible fear interview was just another piece of the broader story of this petitioner's inability to tell the same story twice when asked a direct question as to what happened to him. It's the petitioner's red herring, if you will, to get this court to focus on kind of the beginning processes of the asylum application. The judge did not overemphasize the credible fear interview. It's just another instance when you look at each time and he tells a different story, it raises in the judge's head, how could you forget something so crucial if that really happened? And if it really happened, you would have said it, and therefore, I don't believe you. I have enough reason to think that possibly you're not telling the truth. Well, let me get back to the question I asked before. Why would we think that he would be the only guy in China they elected to have more than one child? Well, actually, Your Honor, I think if you – maybe I didn't understand the first nature of your question. I thought we were talking about in general. Actually, if you look at the State Department reports, I believe there are two in the record, it's actually not the case that this strict, you know, one family, one child policy. It actually often can depend on where the family lives. For instance, if they live in a rural area, oftentimes they are allowed two children. And I think there actually is some discussion in the record about whether or not this person lived in a rural area, Mr. Yang lived in a rural area, and he was under the understanding that maybe he was allowed to have two. It's also in the record, and this is important, not for this case, because this case is just adverse credibility, but just in general as to the forced sterilization issue. The coercive family planning practices, forced sterilization is not necessarily the norm. When you review the State Department reports, they say it can happen. The authorities, the higher-up authorities encourage for it to not happen, but the idea is that local officials feeling pressure may from time to time do it. But it's not the case that it's per se you have more than one child and you are forcibly sterilized. So they wanted her to wear an IUD and she wouldn't do it or had it taken out or something, right? I do believe the record says that. I just was trying to correct possibly an idea that it was. because they wouldn't comply with the other measure, less drastic measure, the IUD. That's where the record comes across, but once again, because this person's credibility is such an issue. I mean, what's important here under the law of the circuit is when there is an omission as to the fundamental material aspect of a claim, that is substantial evidence on which the immigration judge's adverse credibility determination can be based. And even if this panel might see it differently, have viewed the facts differently, in light of that substantial evidence and the law of the circuit, the judge's decision is entitled to deference and should be affirmed. I see that my time is up, but I definitely could answer more questions. I do see the panel is concerned about the case. Thank you, Ms. Reichlein. Thank you. Mr. Chen, you have a minute in rebuttal. The counsel's omissions, but still I want to return to what I first said. We have to focus on at what time it will meet the rights. I still think the immigration judge's decision was mainly based on this applicant's condition and did not tell the full story at a credible hearing period. Another issue about China's practice, and I cited in my brief on page 23, this is from the country report, and it mentioned abortions, sterilizations in Fujian province. And, of course, we cannot prove 100% that will happen. That's not our burden. For us to prove well-founded fear, this court actually says in some cases only 10% would be sufficient. Do you know where his wife and children are today? Are they still in China? Yes, still in China, in Fujian province. Thank you. Thank you. The case has just started. You need to submit it. Thank you, Ms. McLaughlin. Mr. Chen, thank you. That will conclude our session. The panel wants to thank Mary Ellis of Portland for your hospitality. Thank you so much. All right. This court, for this session, stands adjourned. Thank you.
judges: Silverman, Clifton, Zapata